UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION at ASHLAND

CIVIL ACTION NO. 07-16-HRW

CHARLES R. SALYERS,                                            PLAINTIFF,

V.                          **MAGISTRATE JUDGE'S**
                       **REPORT AND RECOMMENDATION**

AK STEEL CORP.,                                            DEFENDANT.

This matter is before the undersigned by virtue of a referral from the presiding Judge for a Report and Recommendation on the Defendant's Motion for Summary Judgment [R. 29]. [R. 36.] Now fully briefed, the matter is ripe for review.

**FACTUAL BACKGROUND**

The Plaintiff, Charles R. Salyers [Salyers]  was hired by AK Steel Corporation [AK Steel] in 2003 as an oven operator.  [R. 31, at 2-4.]  Subsequently, he accepted a salaried position as a "step-up foreman," which allowed him to maintain his union representation, but provided a supervisory role and increased pay.  [Id.]  In this position, Salyers was required to collect from employees he supervised, production reports or "push schedules," and combine those with documents of his own.  These documents recorded details concerning how the ovens he was charged with overseeing operated during that time.  [Id.]  Sometime in 2005, the equipment Salyers worked with began to malfunction frequently, and production slowed.  [Id.]  As a result of this, Salyers alleges, his immediate supervisors began to direct him to falsify the push schedules, sometimes filling them out for him.  [Id.]

Salyers, by his own admission, falsified push schedules for a time before becoming "scared"

and reporting his actions to the United Steelworkers of America [Union] president Doug Bowling [Bowling], supplying him with the falsified documents. [R. 31, at 3.] Bowling asked Salyers to step down as foreman, but Salyers declined, not wanting to give up the income and opportunities for advancement. [Id.] An investigation ensued and, on February 2, 2006, Salyers was fired for his role in falsifying push schedules. [Id., at 4.]

The Union filed a grievance on Salyers' behalf, which was denied by AK Steel. [R. 29, at 4.] As the grievance process moved forward, the Union and AK Steel negotiated the cases of those union employees involved in falsifying records, eventually reaching a settlement offer concerning Salyers. [Id.] Salyers rejected the Union's advice to accept the offer, which would have returned him to work, and the Union declined to pursue his case to arbitration. [Id.] Roughly three months later, Salyers filed suit in Boyd Circuit Court. [Id.]

Salyers brought the instant action against Defendants United Steelworkers of American [Union] and AK Steel Corporation [AK Steel], alleging that he was wrongfully terminated for falsifying production records. [R. 1, Exh. 1.] On February 19, 2007, the Defendants removed the instant matter to the United States District Court pursuant to 28 U.S.C. 1441 and 1446. [R. 1.] On July 3, 2007, the Plaintiff amended his complaint, voluntarily dismissing the Union from the case and adding a state law theory of wrongful termination based upon a violation of public policy. [R. 22.] The Defendant now seeks summary judgment, arguing that the Plaintiff cannot maintain a case for wrongful discharge without resorting to the collective bargaining agreement under which he was employed and without proving some violation of that agreement by the Union. [R. 28.]

The Defendant seeks summary judgment in this matter arguing that the Plaintiff cannot maintain his claim for wrongful termination against AK Steel Corporation without also proving

certain elements concerning the actions of the labor union to which he belongs.  Also, Defendant

argues that Plaintiff's attempt to maintain his claim against AK Steel under a Kentucky public policy

theory is inapplicable to the facts of this case.  In response, the Plaintiff asserts that his amended

claim, that the Defendant fired him because he wouldn't break the law on its behalf, is a valid cause

of action and does not require interpretation of the collective bargaining agreement in order to

resolve. [R. 31.]

## STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the

pleadings, depositions, answers to interrogatories, and admissions on file, together with the

affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party

is entitled to judgment as a matter of law."  The party moving for summary judgment bears the initial

responsibility of informing the district court of the basis for its motion and identifying those portions

of the record that it believes demonstrate the absence of a genuine issue of material fact.  Celotex

Corp. v. Catrett, 477 U.S. 317, 323 (1986).

When the moving party has carried its burden under Rule 56(c), its opponent must "do more

than simply show that there is some metaphysical doubt as to the material facts."  Matsushita Elec.

Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).  While the court must view all

facts in the light most favorable to the non-moving party and give him or her the benefit of all

reasonable inferences that can be drawn from the facts, Anderson v. Liberty Lobby, Inc., 477 U.S.

242, 255 (1986), the non-moving party cannot avoid summary judgment merely by resting on the

pleadings; see Celotex, 477 U.S. at 324. Instead, the non-moving party must come forward with

"specific facts showing that there is a genuine issue for trial."  Matsushita, 475 U.S. at 587.  Thus,

3

where the record, taken as a whole, cannot lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial.  Id. at 586-87.

Additionally, the trial court is not required to "search the entire record to establish that it is bereft of a genuine issue of material fact."  Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479-80 (6th Cir. 1989).  Rather, "[t]he nonmoving party has an affirmative duty to direct the court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact."  In re Morris, 260 F.3d 654, 665 (6th Cir. 2001).

## ANALYSIS

AK Steel argues, in its Motion for Summary Judgment, that Salyers' claim is a "hybrid" claim under Section 301 of the Labor Management Relations Act [LMRA], and that the LMRA preempts all state law causes of action that require interpretation of a collective bargaining agreement.  [R. 29, at 6, citing 29 U.S.C. §185.]  This preemption also applies if consideration of a plaintiff's claims are "inextricably intertwined with consideration of the terms of [a] labor contract."  Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 213 (1985).  Further, a plaintiff bringing a claim under the LMRA must show both that the union breached its duty of fair representation and that the company breached the collective bargaining agreement.  Del Costello v. Int'l Bhd. of Teamsters, 462 U.S. 151, 164-65 (183);  Hines v. Ancor Motor Freight, Inc., 424 U.S. 554, 570-71 (1976).

AK Steel has accurately represented the law concerning hybrid claims under the LMRA, and Salyers has not disputed any of the arguments concerning these issues.  [R. 31.]  Instead, Salyers argues that his amended claim, rooted in Kentucky law, does not involve the collective bargaining agreement and therefore is not preempted by the LMRA.  Thus, Salyers argues, the statutes and case

4

law cited by AK Steel are inapplicable to the case as recast in his amended complaint.  As will be discussed below, this argument is without merit.

A. Salyers' Claim Under Kentucky Law

Salyers argues, in his response to AK Steel's summary judgment motion, that his amended complaint drops the Union as a defendant and that his claim now alleges only that AK Steel violated Kentucky public policy when it allegedly fired him for not falsifying production records.  [R. 22, 31.] Specifically, Salyers points to a Kentucky penal statute, that states:

(1) A person is guilty of falsifying business records when, with intent to defraud, he:
    (a)    Makes or causes a false entry to be made in the business records of an enterprise; or
    (b)    Alters, erases, obliterates, deletes, removes or destroys a true entry in the business records of an enterprise; or
    (c)    Omits to make a true entry in the business records of an enterprise in violation of a duty to do so which he knows to be imposed upon him by law or by the nature of position; or
    (d)    Prevents the making of a true entry or causes the omission thereof in the business records of an enterprise.

K.R.S. § 517.050 (2008).  The public policy interest protected by this statute, according to Salyers, is in accurate information concerning the conduct of publicly-traded entities.  [R. 31, at 11-12.]

Salyers cites to two Kentucky cases that he claims create an independent cause of action for those terminated  contrary to Kentucky public policy:  Grzyb v. Evans, 700 S.W.2d 399 (Ky. 1985); and Firestone Textile Co. v. Meadows, 666 S.W.2d 730 (Ky. 1983).  Salyers then cites to federal case law in support of his argument that this claim, based upon state law, can be independent of the collective bargaining agreement if a court does not have to resort to interpretation of that agreement. See e.g.,  Lingle v. Norge Div. of Magic Chef, Inc., 486 U.S. 399 (1988); Mattis v. Massman, 355 F.3d 902 (6th Cir. 2004); DeCoe v. General Motors Corp., 32 F.3d 212 (6th Cir. 1994).

While it is true that the Sixth Circuit has held that some state law causes of action can be independent of a collective bargaining agreement, Salyers has not put forth such a claim. The public policy claim asserted in this case applies to those employees working in the Commonwealth of Kentucky who are classified as "at-will" employees. In Kentucky, those employees not working under the terms of a labor contract or similar agreement setting forth employer-employee rights and obligations, fall under what is called the "employment-at-will" or "terminable-at-will" doctrine. Grzyb, 700 S.W.2d at 400. Under this doctrine, "an employer may discharge his at-will employee for good cause, for no cause, or for a cause that some might view as morally indefensible." Firestone Textile, 666 S.W.2d at 731.

Salyers admits that he was employed under the terms of the collective bargaining agreement negotiated between the Union and AK Steel. [R. 22, 31.] Salyers, however, makes no argument that his status was somehow converted to that of an at-will employee. He also offers no support for the proposition that the Supreme Court of Kentucky has extended the protections of the public policy exception to those employees who have been hired under the terms of a collective bargaining agreement. Thus, Salyers cannot maintain the  claim  outlined in his amended complaint, as Kentucky law does not afford him such a cause of action when his rights and obligations as a union employee of AK Steel have been set forth in a collective bargaining agreement.

Salyers correctly notes the Supreme Court has ruled that some claims can be independent of a collective bargaining agreement, and thus not preempted by the LMRA. Lingle, 486 U.S. at 406-11. The Sixth Circuit has adopted a two-part test for determining whether a state-law claim is independent of interpretation of a collective bargaining agreement, and thus not preempted by the LMRA:

6

First, courts must determine whether resolving the state-law claim would require interpretation of the terms of the collective bargaining agreement. If so, the claim is preempted. Second, courts must ascertain whether the rights claimed by the plaintiff were created by the collective bargaining agreement, or instead by state law. If the rights were created by the collective bargaining agreement, the claim is preempted. In short, if a state-law claim fails either of these two requirements, it is preempted by § 301.

Mattis, 355 F.3d at 906 (internal citations omitted).

At a minimum, Salyers' claim fails the second prong of this test. As noted above, the public policy exception relied upon by Salyers is not applicable to his circumstances; he is not an at-will employee. As a result, his claim cannot be based on the Kentucky case law he has cited. Further, resorting solely to K.R.S. § 517.050 (the penal statute) will not avail Salyers, as the statute, absent a companion provision or case law interpretation, does not provide an employee a cause of action. Salyers has provided no such statutory or case law citations. The relevant rights Salyers has, concerning his employment with AK Steel and his representation by the Union, are defined by the collective bargaining agreement, not by the state law he has cited.

A final reason Salyers' public policy argument fails is because he did in fact falsify records. This fact has been admitted by Salyers on several occasions, including his amended complaint and response to AK Steel's summary judgment motion. [R. 22, at 2-3; R. 31 at 10-11.] The Sixth Circuit, in Childers v. Product Action Int'l, addressed a set of facts similar to the instant matter and held that an employee who actually falsifies records cannot then claim he was retaliated against for refusing to violate the law. 146 Fed. Appx. 6, *9 (6th Cir. 2005) (unpublished opinion). Childers was employed by Product Action, a corporation that provides sorting, inspection and other services to automotive manufacturers. Id. at *7. Product Action fired Childers for unprofessional behavior, but Childers alleged that he was fired in large part because he raised objections to the company's

alleged practice of not recording defective parts and reporting this to their clients.  Id.

The Court noted that Kentucky's exception to the terminable-at-will doctrine was a narrow one, before holding: "Childers claims that he did in fact falsify the records, as he was instructed to do.  His own testimony, therefore, prevents him from claiming that he was retaliated against for refusing to violate the law or for exercising a right."  Id. at *9.  While Childers was an at-will employee, that distinction has no bearing on the instant case.  It would strain credulity to suggest that a more lax interpretation of the holding in Childers would be forthcoming for an employee who was not employed "at-will," were the exception ever expanded beyond the at-will doctrine.

### B. Salyers' Claim Under the LMRA

Having determined that Salyers cannot bring a claim of wrongful termination under the Kentucky law he has cited, we now turn to an analysis of his claim as a hybrid action under § 301 of the LMRA.  The undersigned first notes that Salyers did not respond to AK Steel's arguments that he has created no genuine issue of material fact as it concerns the Union's duty of fair representation, as it must do in order to prevail.  [R. 31.]

However, while Salyers argues that he avoids LMRA preemption by amending his complaint and dismissing the Union as a defendant, that same amended complaint contains numerous references to actions by Union members, including a charge of "bad faith due to their collusion with AK Steel."  [R. 22, at 4.]  That amended complaint also indicates that Salyers turned down the settlement offer negotiated by the Union, which would have reinstated him to his job and converted his discharge to a disciplinary suspension, because that agreement would not have cleared his employment record and did not contain a provision for back pay or benefits.  [Id.]  Salyers appears to alternately argue that the Union was not at fault while discussing the context of his state-law

8

claim, and then argue that the Union breached its duty to him by not taking his case to arbitration. [R. 29, at 10-12 & R. 29, Exh. 4, at 12-13.]  As AK Steel correctly notes, the mere fact a union declines to take a member's case to arbitration does not establish a breach of duty.  [R. 35, at 9.]

In order to establish that a union breached its duty of fair representation, a plaintiff must show that the union's "conduct toward a member of the collective bargaining unit [was] arbitrary, discriminatory, or in bad faith."  <u>Vaca v. Sipes</u>, 386 U.S. 171, 190 (1967) (*See also* <u>Williamson v. Lear Corp.</u>, 183 Fed. Appx. 497, 503 (6th Cir. 2006)).  Salyers has made no such showing, as his own testimony reveals he believes the Union represented him to the best of its ability, in the form of the efforts of union official Doug Bowling.  [R. 29, Exh. 4, at 12.]  As AK Steel notes, the Union assisted Salyers at every step of the process - filing the grievance, attending meetings between the company and Salyers, representing him at his unemployment hearing, and ultimately negotiating a settlement whereby Salyers would return to his job, albeit without back pay.  [<u>Id.</u>, at 13, 16, 18.]

Once challenged on a motion for summary judgment, a plaintiff cannot rest on the pleadings, <u>Celotex</u>, 477 U.S. at 324, but must respond with "specific facts showing that there is a genuine issue for trial."  <u>Matsushita</u>, 475 U.S. at 587.  Salyers has failed to do this, and cannot demonstrate that there is any genuine issue of material fact concerning whether the Union breached its duty of fair representation, or acted in an arbitrary or discriminatory manner.   In fact, it is clear from the record that Salyers does not believe this duty was breached, inasmuch as it has been articulated by the Supreme Court and the Sixth Circuit.  Further, as it has been established that Salyers must prove such a breach occurred, whether he has sued the Union or not, summary judgment for the Defendant is appropriate.

## **CONCLUSION**

For the reasons set forth above, it is recommended that: Defendant's Motion for Summary Judgment [R. 29] be granted.

Specific objections to this Report and Recommendation must be filed within ten days from the date of service thereof or further appeal is waived. United States v. Campbell, 261 F.3d 628, 632 (6th Cir. 2001); Bituminous Cas. Corp. v. Combs Contracting Inc., 236 F. Supp. 2d 737, 749-750 (E.D. Ky. 2002).   General objections or objections that require a judge's interpretation are insufficient to preserve the right to appeal.  Cowherd v. Million, 380 F.3d 909, 912 (6th Cir. 2004); Miller v. Currie, 50 F.3d 373, 380 (6th Cir. 1995). A party may file a response to another party's objections within ten days after being served with a copy thereof.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b).

Signed May 14, 2008.



**Signed By:**

_**Edward B. Atkins**_   _EBA_

**United States Magistrate Judge**

10